**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

THRYV, INC.,

          Plaintiff,

v.

MARK SHANKS and UPSWELL, LLC,

        Defendants.

CIVIL ACTION NO. 4:21-cv-00812-P

____

**PLAINTIFF'S AMENDED COMPLAINT AND
APPLICATION FOR PRELIMINARY INJUNCTION,
MANDATORY INJUNCTION AND PERMANENT INJUNCTION**

Thryv, Inc. ("Thryv" or "Plaintiff") files this Amended Complaint and Application for Preliminary Injunction, Mandatory Injunction, and Permanent Injunction against Defendants Mark Shanks, individually, ("Shanks") and UpSwell, LLC ("UpSwell") (together, Shanks and UpSwell are referred to herein as, the "Defendants"), and states as follows:

**I.
INTRODUCTION**

1.    This lawsuit is about a calculated scheme by one of Thyrv's former sales representatives to steal Thryv's customers for the benefit of a direct competitor.  While still employed by Thryv, Shanks used his Thryv e-mail account to forward Thryv's proprietary and confidential customer lists and customer contact information to his personal email address.  More specifically, in late February 2021, Shanks forwarded a list of all of Thryv's direct mail clients to his personal e-mail address. See Declaration of Aaron Reali which is attached hereto as Exhibit "1" (hereinafter "Reali Dec."), at Ex. "B."  Two-days after receiving an offer of employment from Thryv's competitor, UpSwell, Shanks sent a list of every search engine marketing services ("SEM") client Thryv has in the State of Georgia to his personal e-mail address. (Reali Dec., Ex.

"D"). He followed that up with an e-mail containing confidential customer information for former and current Thryv customers dating back three-years. (Reali Dec., Ex. "E"). Shanks is now employed by UpSwell.

2.      All of the information Shanks took prior to resigning his position with Thryv is highly confidential and proprietary. None of it is publicly available. Shanks' actions are in clear violation of the employment agreement he signed as a condition of his employment with Thryv, which contains binding confidentiality and non-compete provisions. (See Reali Dec., Ex. "A") (the "Employment Agreement"). Indeed, Shanks provided a copy of his signed Employment Agreement to UpSwell around the same time he downloaded Thryv's confidential customer information. (Reali Dec., Ex. "F"). Thus, both Shanks and UpSwell were aware of his obligations under the Employment Agreement.

3.      Upon learning of these breaches, Thryv immediately sent cease and desist letters to Shanks and UpSwell informing them of the theft of Thryv's highly confidential and proprietary information and the terms of Shanks' Employment Agreement. (See Exhibit "2" and Exhibit "3"). Neither defendant has responded to the cease and desist letters. This is particularly troubling given that UpSwell is a direct competitor of Thryv in the marketplace, and hired Shanks with actual knowledge of his obligations under the Employment Agreement.

4.      Thryv has learned of at least one significant customer that has been solicited and sold advertising by Defendants almost immediately upon Shanks' resignation from Thryv in direct violation of the Employment Agreement and expects to find many others.

5.      Upon filing of this action in the Tarrant County District Court, Thryv requested and was granted a temporary restraining order against Defendants. (Exhibit "4"). Thryv now seeks entry of a preliminary injunction to prevent further irreparable harm that will be caused if

Defendants are allowed to use the confidential and trade secret information belonging to Thryv to contact and market UpSwell's products and services to current and former Thryv customers.

## II.
## PARTIES

6.      Plaintiff Thryv, Inc. is a Delaware corporation with its principal place of business in Tarrant County, Texas.

7.      Defendant UpSwell, LLC is a foreign limited liability company organized and existing under the laws of the State of Georgia whose home office address is located at 100 Chastain Center Blvd. #195, Kennesaw, Georgia 30144.  UpSwell, LLC may be served with process by serving the Texas Secretary of State at P.O. Box 12079, Austin, Texas 78711-2079 as its agent for service of process because Defendant UpSwell, LLC engages in business in the State of Texas, but it has not designated or maintained a resident agent for service of process in Texas. The Texas Secretary of State should then forward citation to UpSwell, LLC's President at his home office address as follows: Timothy Ross, President, UpSwell, LLC, 100 Chastain Center Blvd. #195, Kennesaw, Georgia 30144.  TEX. CIV. PRAC. & REM. CODE §§ 17.044(A)(1) and 17.045.

8.      Defendant Mark Shanks is an individual residing in Sugar Hill, Georgia, whose home address is 5111 Cabot Creek Drive, Sugar Hill, Georgia 30518.  Defendant Mark Shanks may be served with process by serving the Texas Secretary of State at P.O. Box 12079, Austin, Texas 78711-2079 as his agent for service of process because Defendant Mark Shanks engages in business in the State of Texas but he has not designated or maintained a resident agent for service of process in Texas.  The Texas Secretary of State should then forward citation to Defendant Mark Shanks at his home address, 5111 Cabot Creek Drive, Sugar Hill, Georgia 30518. TEX. CIV. PRAC. & REM. CODE §§ 17.044(A)(1) and 17.045.

### III.
### JURISDICTION AND VENUE

9.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Moreover, this Court has personal jurisdiction over Shanks, because he entered into an Employment Agreement with Thryv, which maintains its principal place of business in Tarrant County, Texas.  Further, this Court has personal jurisdiction over both Shanks and UpSwell because Defendants engaged in actions and agreements knowingly and intentionally directed at a Texas resident, taking advantage of, and deriving benefits from, the laws of the State of Texas. Defendant UpSwell knowingly and intentionally induced Shanks to breach his employment agreement with Thryv, resulting in damages to Thryv's business, and Plaintiff's claims arise out of and are directly related to and/or the effects of which were directed to Texas residents.  Based on Defendants' continuous and systematic contacts with Texas, and their specific contacts with Texas, Defendants purposely availed themselves of the privilege of conducting activities in Texas, and they have subjected themselves to jurisdiction of Texas Courts.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because all or a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in the Northern District of Texas, and/or Defendants are subject to personal jurisdiction in the Northern District of Texas.

### IV.
### FACTUAL BACKGROUND

11.     Thryv is a print and digital marketing company that delivers cloud-based business software on a subscription basis as well as a host of marketing products to over 400,000 small businesses in the United States.  Thryv provides consumer services through market-leading search, display and social products and connects local businesses to the monthly visitors of DexKnows.com®, Superpages.com® and yellowpages.com search portals.  Thryv also publishes

a print yellow pages directory in most markets, which lists business telephone subscribers alphabetically by the nature of their business or "advertising" classification.

12.     Thryv's corporate history consists of several name changes and key acquisitions, including a merger between Dex Media, Inc. and YP Holdings, LLC, the parent company of YP, LLC.  Thryv was formerly known as DexYP, which was formerly known as Dex Media, Inc., which was the surviving corporation following the merger between Dex Media, Inc. and YP Holdings, LLC.

13.     Thryv's predecessor, YP, LLC, employed Shanks beginning in November, 2016.

14.     Thryv partners with multiple entities in the marketing industry, such as Google Premier Partner, Yahoo Preferred Partner, MSN Elite Bing Ads Partner, *inter alia*, to provide a suite of technology, products and tools to Thryv's customers.  These products include SEM and direct mail advertising.

15.     A significant portion of Thryv's business comes from repeat customers and the renewal of existing advertising.  Therefore, the identity of Thryv's existing and former customers, and their contact and account history information is extremely confidential and proprietary to the company.  Thryv's proprietary data regarding the past performance of a customer's account gives it a significant competitive advantage in the marketplace.  Therefore, Thryv treats customer information as highly confidential and restricts access to those individuals working on a particular account.

16.     According to its website, UpSwell is a direct competitor of Thryv in the marketplace, selling SEM, direct mail, and other similar products to the same customer base.

**A.     Shanks' Employment Agreement**

17.     Thryv protects its confidential intellectual property, marketing, sales, employee, competitive analysis and operational information.  Because Thryv provided Defendant Shanks

with access to its most sensitive and confidential information in order for him to market its products effectively, Thryv and Shanks entered into an Employment Agreement as a condition of the Shanks employment with Thryv.  Such agreements are standard in the industry.

18.     Shanks was employed by the Plaintiff or its predecessors from November 18, 2016 until on or about April 23, 2021, when he resigned his position.

19.     The Employment Agreement, which remained in effect throughout his employment, expressly precludes Shanks from undertaking the actions at issue in this case, among others, following the termination of his employment with Thryv:

1.    Trade Secrets and Confidential Information.

…

(b) You agree that you will not:

a.  For a period of twenty-four (24) months after Your employment with the Company ends, use or disclose the Trade Secrets or the Confidential Information for any purpose other than the performance of duties on behalf of the Company, except as authorized in writing by the  Company;

b.  Upon the conclusion of your employment with the Company for any reason, retain Trade Secrets or Confidential Information, including any copies existing in any form (including electronic form) that are in Your possession or control without the Company's written consent.
…

2.    Non-Competition.  For twelve (12) months after Your employment with the Company ends, You will not, except as authorized by the Company in writing, engage in the Restricted Territory in competitive services that are similar to the services that You performed on behalf of the Company during Your last twelve (12) months of employment and that are also competitive with the area(s) of the Company's business in which you worked during Your last twelve (12) months of employment..

. . .

3.    Non-Solicitation of Customers.  For twelve (12) months after Your employment with the Company ends, You will not directly or indirectly solicit any Customer of the Company for the purpose of selling or providing any products or services competitive with those in which you were involved during your last twelve

(12) months of employment with the Company.  The restrictions set forth in this Section apply only to Customers with whom You had Contact.  Nothing in this Section shall be construed to prohibit You from soliciting:  (a) to a Customer that has terminated its business relationship with the  Company (for reasons other than being solicited or encouraged by You to do so), or (b) products or services that are not competitive with products or services that the Company offers at the time of the solicitation.

…

For the purposes of this Agreement, "Customer" means any person or entity to whom the  Company has sold its products or services or directly solicited to sell its products or services.

    4.  <u>Non-Recruit of Employees</u>.  For twelve (12) months after Your employment with the Company ends, You will not, directly or indirectly, solicit, recruit or induce any employee to terminate his or her employment with the Company in order to work for any other person or entity engaged in the Company's business.

20.     The Employment Agreement goes on to provide that "[u]pon the termination of Your employment for any reason, You shall immediately return to the Company all of the Company's property, including, but limited to, … confidential or proprietary lists (including, but not limited to, customer or vendor lists existing in any format)."

21.     Following his resignation from Thryv, Shanks went to work for UpSwell, a marketing company that, according to its website, focuses on providing direct mail, mobile, social media, and paid search advertising, as well as SEM, to single and multi-location independent and franchise businesses.  Thryv provides many of these same services to its customers.

22.     In May 2021, upon learning that Shanks had violated the terms of his Employment Agreement by forwarding client, customer, and employee information to his personal e-mail address immediately prior to terminating his employment and going to work for UpSwell, Thryv sent a cease and desist letter to both Shanks and UpSwell, his new employer.  To date, neither has responded and no files have been returned to Thryv.  Nor has there been any representation from

either Defendant that steps have been taken to destroy the files or ensure they are not used by Shanks during his employment by UpSwell.

23.     Upon information and belief, Shanks' duties and responsibilities at UpSwell are the same as or substantially similar to those he performed for Thryv, and UpSwell knew that Shanks was employed by Thryv at the time it made an offer of employment to him.  Shanks provided UpSwell with a copy of his Employment Agreement through his Thryv e-mail account.

24.     Plaintiff believes that Defendants are conspiring to use its trade secret and confidential information in order to improperly compete with it in the marketplace.  Indeed, despite having knowledge of the Employment Agreement, UpSwell has taken no action to affirmatively show that it is taking steps to ensure compliance by Shanks while employed by UpSwell.

25.     Thryv attaches the declaration of Aaron Reali, Sales Manager for Thryv  as Exhibit "1" that proves the allegations in this application for injunctive relief and incorporates it herein by reference.

**V.**
**PROCEDURAL HISTORY**

26.     Thrvy filed its Original Petition and Application for Temporary Restraining Order, Mandatory Injunction, Temporary Injunction and Permanent Injunction in the Tarrant County District Court on June 23, 2021.  The court granted Thryv's application and entered a temporary restraining order (the "TRO") against Defendants on the same day.  Thryv posted bond and the writ of injunction was issued and served on Defendants on June 29, 2021, with a hearing set on Thryv's application for temporary injunction on July 7, 2021.   Defendants were served with the TRO.

27.     Defendant Shanks removed the lawsuit to this Court just days before the hearing, on July 2, 2021.

## VI.
## FIRST CAUSE OF ACTION – VIOLATION OF TEXAS UNIFORM TRADE SECRETS ACT, TEX CIV. PRAC. & REM. CODE ANN. § 134A.003(A) (AS TO BOTH DEFENDANTS)

28.     Thryv hereby incorporates the preceding paragraphs by reference as if fully restated herein.

29.     The Texas Uniform Trade Secrets Act ("TUTSA"), forbids the misappropriation of trade secrets.  Under the TUTSA, a trade secret means "all forms and types of information, including business, scientific, technical, economic, or engineering information, and any formula, design, prototype, pattern, plan, compilation, program device, program, code, device, method, technique, process, procedure, financial data, or *list of actual or potential customers* or suppliers, whether tangible or intangible and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if:  (A) the owner of the trade secret has taken reasonable measures under the circumstances to keep the information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information."  Tex. Civ. Prac. & Rem. Code Ann. § 134A.002(6).

30.     Under the TUTSA, misappropriation means "(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (B) disclosure or use of a trade secret of another without express or implied consent by a person who: (i) used improper means to acquire knowledge of the trade secret; (ii) at the time of disclosure or use, knew or had reason to know that the person's knowledge of the trade secret was:  (a) derived from or through a person who used improper means to acquire the trade secret; (b) acquired under circumstances giving rise to a duty to maintain the secrecy of or limit

the use of the trade secret; or (iii) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of or limit the use of the trade secret . . ." Tex. Civ. Prac. & Rem. Code Ann. § 134A.002(3).

31.    Under the TUTSA, improper means "includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, to limit use, or to prohibit discovery of a trade secret, or espionage through electronic or other means."  Tex. Civ. Prac. & Rem. Code Ann. § 134A.002(2).

32.    Certain confidential and proprietary information of Thryv constitutes trade secrets under the TUTSA, including, but not limited to, its customer lists and customer account details developed over time after the expenditure of significant effort.

33.    Thryv derives economic benefit from the fact that its trade secrets (including its customer lists and information developed over time after the expenditure of significant effort), customer preferences, and customer proposal and marketing materials, are not generally known to individuals or entities outside of Thryv.

34.    Thryv takes reasonable measures to protect its trade secrets.  These measures include password-protected databases, noncompetition and nonsolicitation agreements, and limitations on dissemination of information on a need-to-know basis.

35.    Shanks knew he had a duty to maintain the secrecy of Thryv's trade secrets, specifically, Thryv's customer lists and account information, due in part, to his acknowledgement of such under the Employment Agreement.  UpSwell was also on notice of the Employment Agreement having been provided it in connection with its employment offer to Shanks.

36.    During his employment as a sales representative with Thryv, Shanks acquired Thryv's trade secrets, in the form of customer lists, employee information, and general customer

information.  Subsequently, Shanks improperly disclosed those trade secrets to a direct competitor, UpSwell, without Thryv's consent, for his own financial gain.

37.     Shanks  has stolen and disclosed Thryv's trade secrets and, unless restrained, will continue to disclose this information in the course of his employment with UpSwell.

38.     Thryv has suffered damages as a result of Defendants' actual violation of TUTSA, including loss of customers and employees, harm to its goodwill and reputation, and an unfair reduction in its competitive advantage.

39.     Thryv is entitled to actual damages from Defendants as well as attorneys' fees.

40.     Additionally, Thryv's damages cannot be adequately compensated through remedies at law alone, and thereby require equitable relief in addition to compensatory relief.

**VII.**
**SECOND CAUSE OF ACTION – BREACH OF SECTIONS 2-3 OF THE**
**EMPLOYMENT AGREEMENT**
**(AS TO SHANKS)**

41.     Thryv hereby incorporates the preceding paragraphs by reference as if fully restated herein.

42.     Shanks breached his contract with Thryv.

43.     The Employment Agreement executed by Thryv and Shanks is a valid and enforceable contract.

44.     The restrictions enumerated in the Employment Agreement reasonably protect Thryv's legitimate business interests, including its confidential information, such as customer lists, goodwill among customers, and protected business relationships.

45.     Shanks violated Sections 2-3 of the Employment Agreement by serving as an employee and sales representative of UpSwell, a direct competitor of Thryv, within twelve (12)

months of Shanks' employment with Thryv.  Shanks' work as a sales representative for UpSwell is the same or substantially similar to his work as sales representatives for Thryv.

46.     Thryv has fully performed its contractual obligations with Shanks  under the Employment Agreement.

47.     Thryv has suffered and will continue to suffer damages as a result of Shanks' breach of contract, including loss of its business and contractual relationships, diminished value of its confidential information, harm to its goodwill and reputation, and loss of its employees.

48.     Specifically, as a result of Shanks' breach of contract, Thryv has sustained damages in an amount in excess of the minimum jurisdictional limits of this Court, and Thryv seeks judgment against Shanks for its actual damages, plus interest at the maximum legal rate, attorneys' fees and costs associated with this lawsuit pursuant to applicable law.

49.     Additionally, Thryv's damages cannot be adequately compensated through remedies at law alone, and thereby require equitable relief in addition to compensatory relief.

50.     Shanks' actions will continue to cause irreparable harm and damages to Thryv if not restrained.

## VIII.
## THIRD CAUSE OF ACTION – BREACH OF SECTIONS 1 AND 6 OF THE EMPLOYMENT AGREEMENT
## (AS TO SHANKS)

51.     Thryv hereby incorporates the preceding paragraphs by reference as if fully restated herein.

52.     Shanks also violated Section 1 of the Employment Agreement by forwarding Thryv's Confidential and Trade Secret information to his personal e-mail account immediately prior to terminating his employment and then using that information to benefit himself and UpSwell.

53.    Defendants are continuing to use Thryv's trade secrets to solicit and divert Thryv customers to UpSwell and have refused to return or destroy the information stolen by Shanks, which is a violation of Section 6 of the Employment Agreement, despite Thryv's written notice and demand that they do so.

54.    Thryv has suffered and will continue to suffer damages as a result of Shanks' breach of contract, including loss of its business and contractual relationships, diminished value of its confidential information, harm to its goodwill and reputation, and loss of its employees.

55.    Specifically, as a result of Shanks' breach of contract, Thryv has sustained damages in an amount in excess of the minimum jurisdictional limits of this Court, and Thryv seeks judgment against Shanks for its actual damages, plus interest at the maximum legal rate, attorneys' fees and costs associated with this lawsuit pursuant to applicable law.

56.    Additionally, Thryv's damages cannot be adequately compensated through remedies at law alone, and thereby require equitable relief in addition to compensatory relief.

57.    Shanks' actions will continue to cause irreparable harm and damages to Thryv if not restrained.

## IX.
## FOURTH CAUSE OF ACTION – BREACH OF SECTION 10 OF THE EMPLOYMENT AGREEMENT
## (AS TO SHANKS)

58.    Thryv hereby incorporates the preceding paragraphs by reference as if fully restated herein.

59.    Shanks also violated Section 10 of the Employment Agreement by forwarding Thryv's Confidential and Trade Secret information to his personal e-mail account immediately prior to terminating his employment and then using that information to benefit himself and UpSwell.

60.     Section 10 of the Employment Agreement expressly precludes the use of Thryv's computer system or software for the purpose of "transferring information relating to the Company's business from the Company's system, hardware, or software to an external device or account for the purpose of using, disclosing, or retaining such information after the end of Your employment."  (Reali Dec., Ex. "A" at 4).

61.     Shanks used Thryv's e-mail system on at least four separate occasions to send confidential sales and customer information to his personal e-mail address immediately before resigning his position.

62.     Thryv has suffered and will continue to suffer damages as a result of Shanks' breach of contract, including loss of its business and contractual relationships, diminished value of its confidential information, harm to its goodwill and reputation, and loss of its employees.

63.     Specifically, as a result of Shanks' breach of contract, Thryv has sustained damages in an amount in excess of the minimum jurisdictional limits of this Court, and Thryv seeks judgment against Shanks for its actual damages, plus interest at the maximum legal rate, attorneys' fees and costs associated with this lawsuit pursuant to applicable law.

64.     Additionally, Thryv's damages cannot be adequately compensated through remedies at law alone, and thereby require equitable relief in addition to compensatory relief.

65.     Shanks' actions will continue to cause irreparable harm and damages to Thryv if not restrained.

## X.
## <u>FOURTH CAUSE OF ACTION – TORTIOUS INTERFERENCE WITH EXISTING CONTRACT</u>
## <u>(AS TO UPSWELL)</u>

66.     Thryv hereby incorporates the preceding paragraphs by reference as if fully restated herein.

67.     Shanks signed a valid and enforceable Employment Agreement with Thryv, in which Shanks promised, among other things, not to (a) become employed by a direct competitor of Thryv, (b) solicit business away from Thryv, (c) use information obtained during his employment with Thryv for any purpose other than the benefit of Thryv during his employment, (d) use Thryv's e-mail system to send confidential and trade secret information to his personal account for use after the termination of his employment, and (e) to return all confidential and trade secret information to Thryv upon the termination of his employment for any reason. (Reali Dec., Ex. "A" at 2-4).

68.     The restrictions enumerated in the Employment Agreement reasonably protect Thryv's legitimate business interests, including its confidential information, such as customer lists, goodwill among customers, and protected business relationships.

69.     UpSwell knew of the existence of the Employment Agreement and Shanks' contractual obligations because such agreements are the industry standard and because Shanks provided it with a copy using his Thryv e-mail on April 14, 2021.

70.     Nevertheless, UpSwell intentionally interfered with the contractual relationship between Shanks and Thryv by inducing Shanks to breach his agreement with Thryv and accept employment with UpSwell, a competitive business in which he would be performing the same roles and functions as he did at Thryv.  UpSwell also intentionally interfered with the contractual relationship between Shanks and Thryv by inducing Shanks to steal Thryv's confidential and trade secret information and to disclose and use such confidential and trade secret information.

71.     UpSwell's intentional interference with the contractual relationship between Thryv and Shanks was improper and without justification.  UpSwell knew that Shanks was employed by Thryv when UpSwell hired him because it sent him an employment offer at his Thryv e-mail

address and received a copy of this Employment Agreement shortly thereafter.  Additionally, he brought with him lists of existing and former Thryv customers, including data regarding the products used and rates charged, as well as contact information for those customers with the intention of using that information for the benefit of UpSwell.  Likewise, as non-compete and non-solicitation agreements are the industry standard, UpSwell was on notice of the need to determine the existence of the Employment Agreement between Shanks and Thryv in order to avoid the violation of its terms.

72.     UpSwell knows Thryv is a competitor, and likely recruited Shanks for the purpose of benefitting from his intimate knowledge of Thryv's business practices, customer information, and other confidential and trade secret information.  Shanks took steps to forward trade secret and confidential information belonging to Thryv to his personal e-mail address just two-days after receiving an offer of employment from UpSwell.

73.     UpSwell's actions were improper, unjustified, malicious, and in reckless disregard for Thryv's rights, entitling Thryv to damages.

74.     Thryv has suffered and will continue to suffer damages and irreparable harm as a direct result of UpSwell's interference with Thryv's contractual relations with Shanks, including a diminished value of its confidential information, loss of customers, harm to its goodwill and reputation, and loss of its competitive advantage.

75.     Specifically, as a result of UpSwell's actions, Thryv has sustained damages in an amount in excess of the minimum jurisdictional limits of this Court, and Thryv seeks judgment against UpSwell for its actual damages, plus interest at the maximum legal rate, attorneys' fees and costs associated with this lawsuit pursuant to applicable law and disgorgement of any revenue or profits received by UpSwell as a result of its actions.

76.     Additionally, Thryv's damages cannot be adequately compensated through remedies at law alone, and thereby require equitable relief in addition to compensatory relief.

77.     UpSwell's actions will continue to cause irreparable harm and damages to Thryv if not restrained.

## XI.
## FIFTH CAUSE OF ACTION – CONSPIRACY
## (AS TO UPSWELL)

78.     Thryv hereby incorporates the preceding paragraphs by reference as if fully restated herein.

79.     Shanks and UpSwell constitute a combination of two or more persons.

80.     Shanks and UpSwell agreed that Shanks would leave Thryv to work for UpSwell in the same capacity as he had worked with Thryv and that Shanks would take confidential and trade secret customer and employee information to use for the benefit of UpSwell.

81.     Shanks resigned from his employment with Thryv and began working for UpSwell as part of this agreement.

82.     Shanks violated Sections 1-6 of the Employment Agreement by taking confidential and trade secret information and not returning it upon termination of his employment, going to work with a competitor within twelve (12) months of leaving Thryv, and soliciting current and former Thryv customers on behalf of UpSwell using confidential and trade secret information taken from Thryv.

83.     Thryv has suffered and will continue to suffer damages and irreparable harm as a result of UpSwell's conspiracy with Shanks to misappropriate Thryv's customer lists, including loss of its business and contractual relationships, diminished value of its confidential information, harm to its goodwill and reputation, and loss of its employees.

84.     Specifically, Thryv has sustained damages in an amount in excess of the minimum jurisdictional limits of this Court, and Thryv seeks judgment against UpSwell for its actual damages, plus interest at the maximum legal rate, attorneys' fees and costs associated with this lawsuit pursuant to applicable law.

## XII.
## APPLICATION FOR PRELIMINARY INJUNCTION

85.     Thryv seeks entry of a preliminary injunction against the Defendants prohibiting them from using the Plaintiff's trade secrets and confidential customer information, from soliciting Plaintiff's customers, and employing Shanks in violation of the Employment Agreement Shanks signed as a condition of his employment with Thyrv.

86.     Thryv further seeks entry of a mandatory injunction against Shanks and UpSwell, ordering them to destroy all confidential information obtained from Thryv and provide the court and Thryv with evidence of such destruction.

87.      Entry of an injunction is necessary in order to safeguard Thryv's trade secret and confidential information, customer and employee relationships, and legitimate business interests. Without such relief, Plaintiff's employee relationships, customer relationships and business interests will be imminently and irreparably harmed by Defendants' conduct.

88.     If Plaintiff's application for injunctive relief is not granted, Plaintiff will be imminently and irreparably harmed because once customers and employees have been unlawfully solicited away from Thryv by the Defendants, Plaintiff will not be able to restore those relationships, recover the lost business, or be fully compensated for the associated losses.  The damage to the Plaintiff will be done.  The Employment Agreement between Shanks and Thryv expressly acknowledges that Thryv will suffer irreparable harm upon his breach of the agreement and that "it would be difficult to determine damages, and money damages alone would be an

inadequate remedy for the injuries suffered by the Company." (Reali Dec., Ex. "A" at 4, Section 8). The Employment Agreement further provides that Shanks waives and "will not assert any defense that the Company has an adequate remedy at law with respect to the breach." *Id*.

89.     There is a substantial likelihood that Plaintiff will prevail on its claims against the Defendants at trial because Shanks executed the Employment Agreement as a condition of his employment with Thyrv, and that agreement is binding and enforceable.

90.     Plaintiff has no adequate remedy at law because the damage to its employee and customer relations cannot be calculated and will be irreparable.

91.     The harm faced by Plaintiff outweighs the harm that would be sustained by Defendants if the preliminary injunction were granted. Defendant Shanks agreed to the terms of his Employment Agreement and was granted the benefits under that agreement. Neither Shanks nor UpSwell have the right to use trade secret, proprietary, and confidential information regarding Thryv's business for any purpose. Defendants can show no affirmative right to such information or any legal justification for violation of the Employment Agreement between Shanks and Thryv.

92.     Defendants will not be able recover their customer relationships that are stolen if Defendants are allowed to continue to unlawfully compete with Thryv using its confidential information.

93.     Issuance of a preliminary injunction will not adversely affect the public interest, which is better served by protecting Thryv and others from unfair and unlawful competition as the result of misappropriation of trade secret and confidential information. The same is true of the enforcement of the Employment Agreement between Shanks and Thryv, which are customary in the industry and serve to protect Thryv and its employees from unfair competition in the marketplace.

94.     Plaintiff is willing to post a bond in the amount the Court deems appropriate.

95.     Plaintiff asks the Court to set its application for preliminary injunction for hearing at the earliest possible time and, after hearing the request, to issue a preliminary injunction against Defendants.

## XIII.
## APPLICATION FOR MANDATORY INJUNCTION

96.     Thryv further seeks entry of a mandatory injunction against Shanks and UpSwell, ordering them to destroy all confidential information obtained from Thryv and provide the court and Thryv with evidence of such destruction.

97.     Entry of a mandatory injunction is necessary in order to safeguard Thryv's trade secret and confidential information, customer and employee relationships, and legitimate business interests throughout this process.  Without such relief, Plaintiff's employee relationships, customer relationships and business interests will be imminently and irreparably harmed by Defendants' conduct.

98.     Defendants have no legitimate right to retain the information taken by Shanks prior to his resignation from Thryv and will suffer no prejudice for having to demonstrate that they have destroyed it.  Further, Thryv will suffer hardship if such destruction is not required due to the difficulty in enforcing a prohibitory injunction under the circumstances of this case.  Merely relying on the Defendants not to use this information for the duration of the lawsuit will not adequately protect Thryv.

## XIV.
## REQUEST FOR PERMANENT INJUNCTION

99.     Thryv asks the Court to set its request for permanent injunction for a full trial on the merits and, after the trial, issue a permanent injunction against Defendants.

## XV.
## ATTORNEYS' FEES

100.    Based on the acts and/or omissions of Defendants described above, Thryv has retained the services of Sheppard Mullin Richter & Hampton LLP to protect its interests and pursue the foregoing claims against Defendants.  Thryv is therefore entitled, pursuant to the Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code Ann. § 134A.005(3), and all other applicable Texas law, to recover from Defendants its attorneys' fees and costs incurred in connection with this dispute and in pursuing its claims.  All conditions precedent to Thryv's recovery of attorneys' fees have been fulfilled by Thryv or have been waived by Defendants' acts and/or omissions.

## XVI.
## CONDITIONS PRECEDENT

101.    All conditions precedent to Thryv's claim for relief have been performed or occurred.

## XVII.
## REQUEST FOR RELIEF

Plaintiff Thryv, Inc. requests that Defendants Mark Shanks and UpSwell, LLC be cited to appear and answer and that on final trial, Thryv recover a judgment against Defendants for:

1.    A preliminary injunction prohibiting the Defendants from using the Plaintiff's trade secrets and confidential customer information, from soliciting Defendant's customers, and the employment of Shanks by UpSwell in violation of the Employment Agreement Shanks signed as a condition of his employment with Thyrv;

2.    Entry of a mandatory injunction against Shanks and UpSwell, ordering them to destroy all confidential information obtained from Thryv and provide the court with evidence of such destruction.

3.    Permanent injunction;

4.    Thryv's actual damages in a sum within the jurisdictional limits of this Court;

5.      Pre-judgment and post-judgment interest thereon to the extent permitted by law;

6.      Reasonable attorneys' fees and expenses as allowed by law;

7.      Costs of suit; and

8.      Such other and further relief, whether general or special, at law or in equity, to which Thryv may be justly entitled and which the Court deems appropriate.


Dated:  July 16, 2021

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By      /s/ Dwight M. Francis
        DWIGHT M. FRANCIS
        Texas Bar No. 00785877
        AIMEE C. OLESON
        Texas Bar No. 24036391
        2200 Ross Avenue, 20th Floor
        Dallas, Texas  75201
        Tel. (469) 391-7400
        Fax (469) 391-7401
        dfrancis@sheppardmullin.com
        aoleson@sheppardmullin.com

        ATTORNEYS FOR PLAINTIFF THRYV, INC.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was served on the following attorneys of record, in the manner indicated below, on July 16, 2021 to the following counsel of record:

Greg McAllister                                 ***Via ECF***
Rogge Dunn Group, PC
500 N. Akard Street, Suite 1900
Dallas, Texas 75201
mcallister@roggedunngroup.com
*Attorneys for Defendant Mark Shanks*

Heather C. Barger                             ***Via Email and First Class Mail***
Alston & Bird LLP
2200 Ross Avenue, Suite 2300
Dallas, Texas 75201
heather.barger@alston.com
*Attorneys for Defendant UpSwell, LLC*

*/s/  Dwight M. Francis*
Dwight M. Francis